IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMPARA WASHINGTON, o/b/o )
   BRANDON WASHINGTON, )
       Plaintiff, )
        )
     v. ) Civil Action No.07-1134
        )
COMMISSIONER OF )
SOCIAL SECURITY, )
       Defendant. )

REPORT AND RECOMMENDATION

I. Recommendation

      It is respectfully recommended that the cross motions for summary judgment (Docket Nos. 10 and 14) be denied without prejudice and that the matter be remanded to the Commissioner for further evaluation and consideration.

II. Report

      Presently before the Court for disposition are cross motions for summary judgment.

      On August 21, 2007, Ampara Washington, on behalf of her son, Brandon Washington, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for child's Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf. [1]

---

[1] For ease, the beneficiary, Brandon Washington will be referred to as the
(continued...)

The plaintiff filed an application for Supplemental Security Income Benefits on April 8, 2004 (R.49-51) and benefits were denied on June 25, 2004 (R.38-41). On August 27, 2004, the plaintiff requested a hearing (R.43) and pursuant to that request a hearing was held on February 17, 2006 (R.324-350). An Administrative Law Judge denied benefits on July 13, 2006, (R.17-29), and on July 31, 2006, reconsideration was requested (R.12). On June 22, 2007, the Appeals Council affirmed the prior determination (R.5-8). The instant complaint was filed on August 21, 2007.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Ventura v. Shalala, 55 F.3d 900 (3d Cir. 1995).

---

[1](...continued)
plaintiff.

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As applied to children, a determination of disability is based on a sequence of findings:

> If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. 416.924(a).

The duration requirement provides:

> Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.

20 C.F.R. 416.909.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on February 17, 2006 (R.324-350), the plaintiff's mother testified that he was born on January 12, 1992 (R.330); that the plaintiff's father pays child

support of $113.54 monthly (R.331); that the plaintiff has limited reading ability (R.333); that the plaintiff suffers from depression and irritability, has difficulty concentrating and experiences delusions (R.340-341); that the plaintiff sees a psychologist every two to three weeks (R.335); that he takes medication (R.336-338); that he has been suspended from school for fighting (R.342); that the plaintiff attends special education classes (R.344) and that the plaintiff does not relate well to others (R.346).

The plaintiff testified that he sometimes feels unhappy with himself (R.341).

In addition, certain other evidence was considered.

The plaintiff received pediatric care during the period from January 12, 1992 through September 9, 1994 (R.154-172).

The plaintiff's IEP for the 2004-2005 school year reflects that the plaintiff was maintaining his skills and behavior. He was to receive twenty hours a week of special education services in reading, language arts and mathematics. It was observed that at times the plaintiff verbally annoyed other students and was easily excitable (R.120-134).

The plaintiff was treated by Dr. Greg Gloster between March 20, 1995 and January 15, 2002 for ADHD and depression. Psychiatric care was recommended. At that time other lesser medical conditions were also treated (R.173-198).

During the period from October 4, 2001 through June 14, 2002, the Pittsburgh School District recommended that the plaintiff receive emotional support and behavior modification and participate in small groups (R.72-86).

The plaintiff attended the Rochester, New York, City School District between June 1, 2003 and September 5, 2003 at which time he was classified as emotionally disturbed. He

was to receive speech and language therapy and counseling. It was determined that he participate in a regular education program with consultant teacher services for three hours a day focusing on core academic skills. Depression and ADHA were diagnosed as well as high anxiety levels, feelings of persecution.

The plaintiff was treated at the Pittsburgh Pediatric Association on April 14, 2004 (R.245-247).

In a report of an intelligence evaluation performed on June 17, 2004, John Thomassen, Ph.D. reported a full scale I.Q. of 81 but concluded that this was probably "a significant underestimate of his intellectual capabilities." A diagnosis of disruptive behavior disorder was made. Special education was recommended (R.258-262).

In a report of a speech and language evaluation performed on June 17, 2004, it was noted that the plaintiff suffered from severe receptive and expressive language delay and speech therapy was recommended. The prognosis was good (R.254-257).

The plaintiff was evaluated by Dr. Paulette Harar on June 24, 2004 and she concluded that while the plaintiff suffered from a disruptive behavior disorder and speech and language impairment he did not meet the Social Security level of disability in order to receive benefits (R.248-253).

The plaintiff's school records for the 2005-2006 school year anticipated the plaintiff continuing to receive special education (R.135-140).

The plaintiff was treated at Primary Care Health Services, Inc. between March 20, 1995 and January 24, 2006. It was noted that he was depressed and oppositional. Diagnoses of psychosis, depression, obsessive compulsive disorder and ADHD were made (R.263-302).

5

The Pittsburgh School District re-evaluated the plaintiff on January 31, 2006, and noted inconsistent classroom behavior with low math and reading performances. The plaintiff's psych-tropic medication had only partially relieved his paranoia, auditory hallucinations, depression, obsessions and compulsions. The plaintiff's psychiatrist opined that the plaintiff needed placement in a school for children with psychotic disorders and his testing placed the plaintiff on the 99th percentile for emotional disturbance. However, it was noted that he was meeting his educational goals in a regular school program (R.147-153).

An IEP prepared for the plaintiff on February 8, 2006 noted emotional disturbance with math and reading learning disabilities. The plaintiff was to receive 21-60 percent of his schooling outside the regular classroom (R.304-317).

Based on the evidence presented, the Commissioner concluded:

The claimant has the following severe impairments: disruptive behavior disorder, speech and language impairment and attention deficit hyperactivity disorder. While there are some indications in the record that the claimant can be depressed and may have some other personality problems, I do not believe that the record contains definitive diagnoses for such impairments ...

The disruptive behavior disorder and speech and language impairment are assessed ... by the State agency's staff. The claimant also has an attention deficit hyperactivity disorder as described by school staff characterized by marked inattention and impulsivity, but not marked hyperactivity...

The claimant does exhibit marked inattention and impulsivity. However, the record does not support a finding that he experiences marked hyperactivity ... furthermore, it appears when Brandon is properly medicated inattention, impulsivity and any hyperactivity decrease. Therefore, listing 112.11 is not met...

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could

reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not entirely credible...

The regulations provide that a school-age child ... without an impairment should be able to learn to read, write, and do math, and discuss history and science...

The claimant has less than marked limitations in acquiring and using information. State agency staff previously assessed ... less than a marked limitation in this domain. The claimant's current IEP ... shows him in the 8th grade as doing math at the end of the 3rd grade level and as reading at the 2nd to 3rd grade level. This certainly suggests some problems. However, when the state agency staff assessed the claimant ... his reading/writing abilities were actually less than the latest evidence indicates. I.Q. testing ... shows a full scale I.Q. of 81 which is indicative of low average intellectual functioning. However, it is also noted that the same examination indicates that Brandon did not fully cooperate with testing; thus, it is believed the test results may be a significant underestimate of Brandon's intellectual capabilities. Brandon ... receives special education services outside a regular classroom in reading/English, language arts and mathematics. At the same time he does attend regular classes for science and social sciences, though apparently he also receives consultation help from special education staff... I believe the classes in which he receives no assistance or little assistance from special education staff are indicative that he has some abilities to function independently in this domain. Furthermore, it appears to me from the testimony and other evidence that the claimant otherwise functions outside of a school setting at higher levels of capacity...

The claimant has less than marked limitations in attending and completing tasks... I also note that Ms. Washington testified that Brandon is "great" at video games. At school he appears to do well in computers and physical education classes. This appears to me to be indicative of Brandon's ability to complete tasks when he wants to do something...

The claimant has less than marked limitation in interacting and relating with others... Brandon was started on psycho tropic medication [January 15, 2002] for mood stabilization... These records end at this time which suggests that mood stabilization occurred with medication treatment ... In the records from

> Rochester Public Schools ... Brandon is described as being able to establish friendships with peers even though he is quiet and withdrawn. He is also described as having a good sense of humor and as having some appropriate peer relationships by the end of the school year... When Dr. Gorry saw the claimant and Ms. Washington again on March 15, 2005, Ms. Washington indicated that she had not given Brandon the prescribed medication. However, at the next kept appointment of May 7, 2005, Brandon admitted the medication helped...
>
> Considering this evidence I believe that Brandon has more recently in late 2005 and January 2006 had some severe problems. Considering just this period of time I might consider finding a marked limitation in the domain. However, when looking at all the evidence for the entire period of time at issue, I believe that it is most appropriate to assess the less than marked limitation. I also note that I am not sure that Brandon has been medication compliant...
>
> The claimant has no limitations in moving about and manipulating objects...
>
> The claimant has less than marked limitation in the ability to care for himself...
>
> The claimant has no limitation in health and physical well-being...
>
> The claimant has not been disabled, as defined in the Social Security Act, since March 26, 2004, the date the application was filed... (R.22-29).

In evaluating the severity of such impairments, a child must demonstrate either "marked" limitation in two of six domains or "extreme" limitation in one domain of functioning. Those six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self, and (6) health and physical well-being. 20 C.F.R 416.926a(b)(1) and 416.926a(g)-(l).

The record demonstrates that the plaintiff suffers from a disruptive behavior disorder, speech and language impairments and ADHD. Although, when he takes his medication

8

he appears to be more controlled and is able to perform better at school, it also warrants notice that for a significant portion of the day he receives special remediation.. In order to be disabling, an attention deficit hyperactive disorder must meet the requirements set forth in Listing 112.11, Pt. 404, Subpart P. Appendix 1 which provides:

> Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of all three of the following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;
>
> AND
>
> B. For children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02 [which provides]:
>
> 2....a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings ... and including, if necessary, the results of appropriate standardized psychological tests...
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings ...
>
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings ...
>
> d. Marked difficulties in maintaining concentration, persistence, or pace.

The record appears to support the fact that the plaintiff suffers some degree of limitation in attention and impulsivity and acquiring and utilizing information. Whether or not these limitations are "marked" or "extreme" appears to be critical and not fully developed in the

record. Rather, it appears that the Administrative Law Judge has employed confusing and somewhat arbitrary standards in reaching his conclusion and not pointed to definitive evidence supporting his conclusion.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. <u>Biener v. Calio</u>, 361 F.3d 206 (3d Cir. 2004). When considered in light of the requirements for determining disability, it is not clear whether or not the Commissioner's conclusion is supported by substantial evidence, and more development is required. Accordingly, it is recommended that the cross motions for summary judgment be denied without prejudice and that the matter be remanded for further evaluation and consideration.

Within thirteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                Respectfully submitted,

                                s/ROBERT C. MITCHELL,

Filed: April 3, 2008               United States Magistrate Judge